UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LATISHA POLLARD, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:12-cv-01765-WWE |
| | : | |
| LAWRENCE & MEMORIAL HOSPITAL, INC., | : | |
|     Defendant. | : | |

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this action, plaintiff Latisha Pollard alleges that defendant Lawrence & Memorial Hospital, Inc. discriminated against her (1) because of her race in violation of Title VII and the Connecticut Fair Employment Practices Act ("CFEPA"); and (2) because of her alleged disability in violation of the American's with Disabilities Act ("ADA") and the CFEPA. Plaintiff also alleges negligent and intentional infliction of emotional distress against defendant in connection its termination of her employment.

Defendant has moved for summary judgment on all of plaintiff's claims. For the following reasons, defendant's motion will be granted in part and denied in part.

## BACKGROUND

The parties have submitted statements of facts and supporting materials, which reveal the following factual background.

Plaintiff, an African American, was hired by defendant on December 15, 2008. Plaintiff initially worked 24 hours per week as a part-time phlebotomist, obtaining blood specimens from patients.

Plaintiff reported directly to her supervisor, Nicole Gomes, who interviewed and hired plaintiff of her own authority. Ms. Gomes is white.

After plaintiff completed her initial three-month introductory period of employment, Ms. Gomes gave her a positive review.

On August 17, 2009, while plaintiff was a part-time employee, Ms. Gomes issued a written warning to plaintiff based on plaintiff's violation of defendant's attendance policy.  As a part-time employee, plaintiff was allowed three sick time occurrences in a rolling calendar year.  Consecutive days of absence were counted as only one occurrence.  Between January 27, 2009, and August 17, 2009, inclusive, plaintiff had called out sick on four work days.  The August 17 warning stated that plaintiff was expected to report to work as scheduled in the future and that further occurrences may result in further disciplinary action.  Plaintiff signed the warning on August 24, 2009.

Ms. Gomes evaluated plaintiff's performance again in December 2009 and found that plaintiff achieved expectations overall in every specific category.  Ms. Gomes praised plaintiff for: her customer service skills; being respectful and courteous to patients and co-workers; working well with staff and being flexible with her schedule; being informed of department issues; her venapuncture skills; following guidelines; and her specimen labeling.  However, the December 2009 evaluation also noted that plaintiff was in the disciplinary process for attendance.  Plaintiff considers the December 2009 evaluation to be fair.

On January 25, 2010, while plaintiff was a part-time employee, Ms. Gomes issued a memo to plaintiff in regard to the balances of her sick time and paid time off.  The memo informed plaintiff that she had six occurrences as of that date.  The memo reminded plaintiff that she had received a written warning in August 2009, and that additional occurrences would lead to further discipline.  Plaintiff has no basis upon which to dispute the January 25, 2010 memo and

does not consider it to be unfair.

On April 30, 2010, while plaintiff was a part-time employee, Ms. Gomes issued her another written warning based on violation of defendant's attendance policy. Between May 29, 2009, and April 5, 2010, inclusive, plaintiff had called out sick on six work days. The April 30, 2010 warning stated that plaintiff was expected to report to work as scheduled in the future and that further occurrences may result in further disciplinary action. Plaintiff signed the warning on April 30, 2010. Plaintiff does not dispute the contents of the April 30 memo and agrees that she was noncompliant with defendant's attendance policies as of that date. Plaintiff understood that if she were absent again after the April 30 memo, she could be terminated.

In June 2010, plaintiff requested that she be changed from part-time to per diem status in order to allow her to take care of her son. Ms. Gomes granted plaintiff's request without difficulty.

As a per diem employee, plaintiff remained obligated to inform Ms. Gomes of absences in the same way she had been as a part-time employee. Defendant had an attendance policy and a progressive discipline policy throughout plaintiff's employment. Plaintiff had a responsibility to comply with defendant's employee policies, including those related to attendance and notification of absences.

On December 15, 2010, Ms. Gomes issued plaintiff a memo which stated that plaintiff was expected to report to work as scheduled in the future and that further occurrences may result in further disciplinary action. Plaintiff signed the memo on December 16, 2010.

Plaintiff received an annual evaluation in December 2010. The review gave plaintiff an overall score of "Achieves Expectations." Plaintiff received a pay raise along with her

evaluation.  Ms. Gomes praised plaintiff for her good customer service skills and stated that plaintiff was respectful and courteous with patients and coworkers.  Ms. Gomes also praised plaintiff for her venipuncture skills, for following guidelines as to specimens, for receipt of positive comments about plaintiff, and for plaintiff's picking up shifts when possible.  Ms. Gomes also praised plaintiff for decreasing her number of missed tests from the prior year.  However, Ms. Gomes also noted that plaintiff was not in compliance with defendant's attendance policy as of December 2010.  Plaintiff does not believe that the December 2010 evaluation was discriminatory in any way.  Indeed, as of December 16, 2010, plaintiff does not believe that Ms. Gomes had said or done anything to plaintiff that was discriminatory.

On May 31, 2011, while plaintiff was a per diem employee, Ms. Gomes issued a final written warning to plaintiff based on violation of defendant's attendance policy.  Plaintiff contends that she had not violated the attendance policy at that time because the final written warning erroneously included a non-existent sick day occurrence and included a day that plaintiff received permission to take off.  Moreover, plaintiff contends that as a per diem employee, she was no longer bound by the three-occurrence attendance policy.  Nevertheless, the May 31, 2011 warning stated that further occurrences may result in termination.  Plaintiff signed the written warning on May 31, 2011.  Plaintiff understood that one additional absence could lead to termination of her employment.  At deposition, plaintiff testified that she does not believe that the final written warning of May 31, 2011, was discriminatory.

Nevertheless, plaintiff contends that a coworker, Ms. Engdall, told her sometime before the May 31, 2011 warning that Ms. Gomes does not like black women.  Ms. Engdall testified at deposition that it was plaintiff who was speculating that perhaps Ms. Gomes did not like black

people.  Ms. Engdall testified that she told plaintiff that this did not make sense because Ms. Gomes had a black husband.

Plaintiff testified that:

It was little things [Ms. Gomes] would do, coming into the lab and saying hello and goodbye to everybody except me.  There would be random testing for certain machines that we were supposed to do.  For some reason it was always my turn, and she would lean over my shoulder and make sure I was doing it correctly, and just really down my back instead of going to somebody else and letting them do it for once.

Ms. Engdall testified that plaintiff was treated no differently from other employees. Plaintiff does not know whether or how often other phlebotomists had random testing conducted on their own machines.

Plaintiff injured her ankle on June 4, 2011.  Ms. Gomes sent plaintiff an email on June 6, 2011.  The email informed plaintiff that because she left in the middle of her shift on June 4, and was not working on June 5, she was four occurrences over defendant's attendance policy.  The June 6 email was not disciplinary but was instead a reminder.

According to medical notes, plaintiff was taken out of work from June 7 through June 20, 2011, and then from August 11 through August 6, 2011.  Plaintiff then returned to work and requested some partial shifts.  Plaintiff does not remember Ms. Gomes giving her any difficulty for working shorter hours during that time.

Plaintiff was scheduled to work on August 28, 2011, from 9 a.m. to 1:00 p.m.  Plaintiff was physically able to report to work that day.  Plaintiff was the only one of nineteen employees who did not show up for work as scheduled on the morning of August 28, 2011, due to Hurricane Irene.  Plaintiff texted Ms. Gomes to let her know that she would not be able to make it to work.

After plaintiff's absence of August 28, 2011, Ms. Gomes recommended to Gary Cass,

Director of Human Resources, that plaintiff's employment be terminated. On August 29, 2011, Ms. Gomes sent an email to Mr. Cass summarizing that recommendation. In that email, Ms. Gomes noted that she had been super lenient in regard to plaintiff because plaintiff had a valid injury but that Ms. Gomes had "had enough," referring to all of plaintiff's absences over the years. Mr. Cass agreed with Ms. Gomes' decision without any reservations.

Ms. Gomes informed plaintiff by phone on August 30, 2011, that her employment was terminated. Plaintiff contends that Ms. Gomes stated that she was being terminated because of the call outs due to her leg injury; Ms. Gomes denies making such a statement. Plaintiff also received a letter from defendant, informing her that her employment was being terminated due to excessive absenteeism.

During her employment, plaintiff never complained to defendant about discriminatory treatment.

Plaintiff filed an internal grievance over her termination. The termination was upheld.

Plaintiff believes that her only disability is an ankle condition, resulting from her injury of June 4, 2011. At deposition, plaintiff was uncertain as to her medical diagnosis with regard to her ankle.

Plaintiff states that she can no longer exercise, run, and play with her kids on a regular basis because of her ankle injury. She wears a ankle brace if she is going to be on her feet for more than two or three hours or if she is going to exercise.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

    The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

    If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

    **Race Discrimination**

    Plaintiff claims that she was discriminated against because of her race in violation of Title VII and the CFEPA. Discrimination claims are assessed under the familiar burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Under McDonnell Douglas, the plaintiff must first establish a *prima facie* case of discrimination by showing that (1) she belongs to a protected class; (2) she is qualified for her position; (3) she suffered adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See Weinstock v. Columbia Univ., 224 F.3d 22, 42 (2d Cir. 2000). Once the plaintiff has established a *prima facie* showing of

discrimination, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employment action." McDonnell Douglas, 411 U.S. at 802. Once the defendant proffers a legitimate, nondiscriminatory reason for the challenged action, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." Weinstock, 22 F.3d. at 42. The burden then shifts back to the plaintiff to "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." Id.

  Here, plaintiff relies on her own unsupported assertions that coworkers told her that Ms. Gomes does not like black women. See Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995). Specifically, plaintiff testified that, according to Ms. Engdall, Ms Gomes's ex-husband had affairs with black women, so Ms. Gomes does not like black women. Multiple levels of hearsay aside, Ms. Engdall submitted an affidavit disclaiming such a conversation. Ms. Engdall states that she knows nothing about the race of supposed girlfriends of Ms. Gomes's ex-husband and has no basis for making any such statement about Ms. Gomes's ostensible dislike of black women. Plaintiff also testified that she felt discriminated against because of the little things Ms. Gomes would do, such as saying hello and goodbye to everybody except her. Again, plaintiff's testimony is rebuffed by her coworkers. Finally, plaintiff testified that it was "always" her turn to be tested for proficiency with certain medical machines but has no evidence of how often other phlebotomists were tested.

  Defendant proffers that plaintiff was terminated for a history of absences, much of which plaintiff acknowledges. Presuming *arguendo* that plaintiff has established a *prima facie* case of race discrimination, she cannot demonstrate that defendant's proffered, non-discriminatory

reason is mere pretext for discrimination.

> In order to meet his burden of establishing pretext, the plaintiff must produce sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons presented by the defendant were false, and that more likely than not discrimination was the real reason for the employment action. In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. It is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination.

Carlus v. Connecticut Dept. of Public Health, 4 F. Supp. 3d 382, 388-89 (D. Conn. 2014) (internal quotes and citations omitted).

Ms. Gomes hired and praised plaintiff in all aspects of her employment other than attendance. Ms. Gomes decided with the approval of defendant's human resources department to terminate plaintiff's employment. Plaintiff has demonstrated no evidence of any statement or conduct that reveals animus against her or anyone else on the basis of race, and her claims that other employees were treated more favorably in terms of testing and daily greetings are based on general suppositions about vague conduct. Moreover, plaintiff cannot show that employees with whom she compares herself were similarly situated and received disparate treatment. Finally, plaintiff's assertion that, as a per diem employee, she was not subject to the attendance policy is uncorroborated. In sum, the evidence, taken as a whole, does not support a rational inference of discrimination. Summary judgment will be granted as to plaintiff's claims of race discrimination.

**ADA Discrimination**

ADA discrimination claims are likewise subject to *McDonnell Douglas* burden-shifting.

> To establish a prima facie case under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to

      perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.

McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013).

Defendant argues that plaintiff has failed to plead that she is disabled under the ADA and cites Cabassa v. Smith for the proposition that a plaintiff must plead all essential elements of an ADA claim, including facts tending to show a substantial limitation in a major life activity. See 2010 WL 786312, at *3-4 (N.D.N.Y.). In Cabassa, the plaintiff's total failure to assert any facts tending to show a substantial limitation to a major life activity made the claim ripe for dismissal. Id. In contrast, here, although plaintiff did not specifically plead limitations of major life activities, she did plead that she tore tendons in her ankle and that her doctor recommended physical therapy, time off from work, and possible surgery. These facts tend to show a substantial limitation to a major life activity. In Maxwell v. New York University, the plaintiff's ADA claim was dismissed because his complaint contained no allegation that suggested that his ability to attend school was impaired by his disability. 2009 WL 1576295, at *11. In the instant case, the allegation that plaintiff's doctor recommended time away from work suggests that her ability to work was impaired. Finally, defendant cites Hedges v. Town of Madison for the assertion that district courts should not have to infer disability from mere allegations of medical conditions. See 456 Fed. Appx. 22, 24 (2d Cir. 2012). There, the plaintiff failed to allege both disability and discrimination based on disability. Id. Here, plaintiff's complaint explicitly states that "defendant discriminated against [plaintiff] based on her disiability." Accordingly, plaintiff's complaint will not be dismissed for failure to plead disability.

Defendant argues that plaintiff has failed to present sufficient *prima facie* evidence that

she was substantially limited in a major life activity. Plaintiff responds that she has demonstrated that her ankle impairment substantially limits the major life activities of walking, standing, and working. The Court finds that whether plaintiff was disabled within the meaning of the ADA during the time relevant to the complaint presents a disputed issue of material fact. Indeed, plaintiff's ankle injury caused "difficulty with stair negotiation" and required her to use her "upper extremities to pull herself on the railing, ascending reciprocally and descending in a step by step manner." Pl.'s Ex. K. Per a follow-up appointment, plaintiff was "still having difficulty standing" over three months after suffering her ankle injury. Plaintiff underwent a "[m]odified Brostrom ankle ligament repair and reconstruction" surgery in November 2011. Pl's Ex. W. After this initial surgery, plaintiff still had "[c]hronic instability" in her ankle and was required to undergo another ankle surgery in August 2012, fourteen months after her injury. Pl.'s Exs. P, X. Plaintiff continues to use a brace when she is on her feet for more than two or three hours at a time. Moreover, temporary impairments can be substantially limiting. 29 C.F.R. § 1630.2(j)(1)(ix); See Summers v. Altarum, 740 F.3d 325, 332 (4th Cir. 2014). Accordingly, the Court finds that plaintiff has adequately demonstrated substantial limitation of a major life activity.

      Defendant argues that plaintiff was not a qualified individual with a disability because of her attendance problems. "As general rule, some degree of regular, predictable attendance is fundamental to most jobs, ... and an employee who cannot get to work does not satisfy the essential requirements of her employment." Colby v. Pye & Hogan LLC, 602 F. Supp. 2d 365, 371 (D. Conn. 2009). Plaintiff points out that her performance reviews demonstrate that she achieved expectations in every single category of review, including those related to attendance.

Specifically, Ms. Gomes found that plaintiff reported to work prepared and on time, and that she provided adequate notice of lateness and absences. Plaintiff also disputes that, as a per diem employee, she was required to meet the three-occurrence attendance rule. Accordingly, the Court finds that whether plaintiff was qualified during the time relevant to the complaint presents disputed issues of material fact.

Finally, defendant argues that plaintiff has failed to produce sufficient evidence that she was terminated because of her alleged disability. However, plaintiff's termination letter, signed by Ms. Gomes, stated that plaintiff was terminated for excessive absenteeism, namely "5 full day occurrences and one partial day occurrence" since her final warning. Plaintiff provided defendant with doctors' notes indicating that she was not cleared to return to work on those dates. Ms. Gomes' email to Mr. Cass corroborates the receipt of the doctors' notes. Ms. Gomes's email states, "I have been super lenient here since she had a valid injury but I've really had enough." In response to a follow-up email from Mr. Cass noting that plaintiff "thinks the 5 additional days of absences after the last and final should be discounted as medical," Ms. Gomes responded, "I don't think she should be given any 'special' treatment for her other absences. She was scheduled to work and didn't come in." Interpreting the evidence in plaintiff's favor, as the Court must, this correspondence is sufficient to demonstrate that defendant's nondiscriminatory reasons for its action were false, and that more likely than not discrimination was the real reason for the action. See Weinstock, 224 F.3d at 42. Accordingly, plaintiff's ADA discrimination claim will not be dismissed.

**CFEPA Disability Discrimination**

The CFEPA's definition of disability is broader than the ADA's, as unlike the ADA, the

CFEPA does not require the plaintiff to prove substantial limitation of a major life activity. Beason v. United Technologies Corp., 337 F.3d 271, 278 (2d Cir. 2003). Under the CFEPA, "Physically disabled refers to any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness . . ." Conn. Gen. Stat. § 46a-51(15). Moreover, Connecticut courts look to federal precedent concerning employment discrimination for guidance in enforcing state anti-discrimination statutes. Ezikovich v. Commission on Human Rights and Opportunities, 57 Conn. App. 767, 774 (2000). Accordingly, plaintiff's CFEPA disability claim will not be dismissed.

### Negligent Infliction of Emotional Distress

In order to sustain a claim of negligent infliction of emotional distress in the employment setting, "the plaintiff must allege that [her] actual discharge was done in an inconsiderate, humiliating or embarrassing manner." Copeland v. Home and Community Health Services, Inc., 285 F. Supp. 2d 144, 152 (D. Conn. 2003). Plaintiff cannot meet this burden. Accordingly, her negligent infliction of emotional distress claim will be dismissed.

### Intentional Infliction of Emotional Distress

In order to prevail on a claim of intentional infliction of emotional distress, four elements must be established: (1) that the employer intended to inflict emotional distress or that it knew or should have known that emotional distress was the likely result of its conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Appleton v. Board of Educ. Of Town of Stonington, 254 Conn. 205, 210 (2000). Here, plaintiff

has failed to make a sufficient showing that defendant's conduct was extreme and outrageous, an essential element of her case for which she has the burden of proof.  "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." Id.  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 210-211.

Here, defendant's conduct was not extreme or outrageous.  Indeed, mere termination of employment is usually insufficient to satisfy the extreme and outrageous standard for a claim for intentional infliction of emotional distress.  See Harhay v. Blanchette, 160 F. Supp. 2d 306, 315 (D. Conn. 2001).  Accordingly, plaintiff's intentional infliction of emotional distress claim will be dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted in part and denied in part.  Defendant's motion is GRANTED as to plaintiff's claims of race discrimination and infliction of emotional distress; defendant's motion is DENIED as to plaintiff's claims of disability discrimination.

Dated this 3rd day of June, 2015, at Bridgeport, Connecticut.

    /s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE